# CASTELLI v. DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF MEDICINE and GRANADO-VILLAR v. DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF MEDICINE

Case Nos. 87-1594 and 87-2194

State of Florida, Division of Administrative Hearings

January 22, 1989

### APPEARANCES OF COUNSEL

**Deborah Miller,** for petitioners.

**Allen R. Grossman,** for respondent.

### OPINION OF THE COURT

LINDA M. RIGOT, Hearing Officer.

*RECOMMENDED ORDER*

Pursuant to notice, this cause was heard by Linda M. Rigot, the assigned Hearing Officer of the Division of Administrative Hearings, on September 17-18, 1987, in Miami, Florida.

Respondent denied the application of each of the Petitioners for licensure by examination as a physician in the state of Florida. Each

Petitioner requested a formal hearing on that denial. After these causes were referred to the Division of Administrative Hearings for the conduct of those formal hearings, Petitioners moved to consolidate the cases, and the consolidation was granted. Accordingly, the issues for determination herein are whether each of the Petitioners is entitled to approval of his or her application for licensure by examination.

Petitioners presented the testimony of Guiseppe Castelli; Deise C. Granado-Villar; Carmen Rojas; Margaret Louis Cason, M.D.; Erma Shockley; Dorothy J. Faircloth; Ramon Rodriguez-Torrez; Charles Lankau, M.D.; Juan Arcuri; Santiago Garcia; Michael Borrelli; Edna Evenson; and Elizabeth J. Hart. Respondent presented the testimony of Israel Saferstein; Edna Evenson; Koralia Lopez; Dorothy J. Faircloth; and Erma Shockley.

Additionally, Joint Exhibit numbers 1; Petitioners' Exhibit 4 and 7-11; and Respondent's Exhibits numbered 2-7 were admitted in evidence.

Both parties submitted post hearing proposed findings of fact in the form of proposed recommended orders. Rulings on each proposed finding of fact can be found in the Appendix to this Recommended Order.

## FINDINGS OF FACT

1. Petitioner Castelli originally applied for licensure as a physician in the state of Florida by application signed, notarized, and dated July of 1985.

2. In conjunction with his application for licensure, Petitioner Castelli submitted a FLEX application that was signed and dated July 27, 1985.

3. The 1985 application was accompanied by several documents, including Castelli's "Titulo" signed by him, dated September 15, 1972, and notarized by Norma Perez as a true and correct copy of the original.

4. Petitioner Castelli was permitted by the Board of Medicine to take the December, 1985, FLEX, which Castelli did take and fail.

5. By letter signed and dated August 30, 1986, Petitioner Castelli requested that he be allowed to retake the FLEX examination in December of 1986.

6. A notice dated October 15, 1986, was sent by the Board to the address provided by Castelli informing him that, among other things, he was required to complete a new application because his previous

application was over one year old. Petitioner Castelli did not respond to that notification.

7. On November 17, 1986, Petitioner Granado-Villar telephoned Respondent's employee Chandra Prine to inquire as to the status of her pending application to take the FLEX examination on December 5, 1986. Petitioner Granado-Villar was advised by Prine that her application was in order and that she should be receiving her admission card for the examination. Granado-Villar then asked Prine the status of the application of Petitioner Castelli. Prine told Granado-Villar that Castelli's application was incomplete because updated pages 2-5 had never been received and because no current ECFMG certificate was in his file. Prine further advised Granado-Villar that the deadline for applications for the December 5, 1986 FLEX examination had passed. In response to Granado-Villar's inquiries as to what could be done to help Castelli, Prine advised her that if his application file could be completed by 5:00 p.m. on November 18, 1986, Prine would discuss the matter with her supervisor and attempt to place Castelli's application on the agenda for the November 22, 1986 meeting of the Board of Medicine. Granado-Villar advised Prine that Castelli was a resident of Spain and that she would attempt to get an updated application form to Castelli by overnight mail. Prine told Granado-Villar to include copies of the receipts for overnight mail with Castelli's updated application.

8. Petitioner Granado-Villar called Petitioner Castelli in Spain, and they decided to send the application to Castelli by commercial airlines in hopes of completing the round-trip in time to file it in the Board's office by 5:00 p.m. on November 18, 1986. During that conversation Castelli gave Granado-Villar the information she requested so that she could complete the updated application form for him. Granado-Villar typed some of the information on a photocopy of an application and subsequently filled in another portion by hand. Castelli advised Granado-Villar to write the name of Monserrat Compano, a former stewardess for Iberia Airlines on the outside of the envelope so that the envelope might be accorded special treatment.

9. Upon contacting Iberia Airlines, Granado-Villar discovered that there were no flights from Miami to Madrid on November 17 and that the only option was to utilize an Eastern Airlines flight from Miami to New York and then a connecting Iberia flight from New York to Madrid.

10. Granado-Villar placed the updated application in a manila envelope bearing only the names of Monserrat Compano and Petitioner

**193**

Castelli on the outside. She took the envelope to Carmen Rojas, an employee of Eastern Airlines and a friend of hers. She explained that the envelope must be placed on the Eastern flight leaving for New York at 1:00 p.m. on November 17 so that it could subsequently be placed on the Iberia flight from New York to Madrid.

11. Rojas took the envelope to the flight crew for the Eastern flight to New York and gave it to one of the stewardesses, telling her to take the envelope and deliver it to the Iberia ticket counter at John F. Kennedy Airport in New York. No arrangements were made by Rojas, Granado-Villar, or Castelli for getting the envelope from the Iberia ticket counter in New York to the Iberia flight to Madrid.

12. During the morning of November 18 Petitioner Granado-Villar arranged for a delivery service to pick up an envelope from her at the hospital where she is employed and deliver it to Respondent in Tallahassee with specific directions that the envelope must be on the Piedmont Airlines fight leaving Miami for Tallahassee at 5:00 p.m. on November 18, 1986. Also on the morning of November 18 Petitioner Granado-Villar made arrangements with Erma Shockley, an employee at Miami Children's Hospital and a notary public, for Shockley to notarize Castelli's signature on his application later that day.

13. On November 18, 1986, Petitioner Granado-Villar took to Shockley a completed application form. She told Shockley that the signature on the form was that of Petitioner Castelli and that Castelli had signed the application form on the previous day at the airport in Madrid. Although both Shockley and Granado-Villar knew that Castelli was not present, Shockley notarized the signature on Castelli's application. Further, Shockley and Granado-Villar decided that Shockley would date her notarization as having been done on November 17 in order that the date of the notarization would be consistent with the date of the signature.

14. After the document was notarized, Petitioner Granado-Villar went to the emergency room area to await the arrival of the courier that she had previously arranged. The courier arrived within 5 to 10 minutes thereafter.

15. Edna Evenson, a courier for Crown Courier Services, Inc., picked up an envelope containing an application for Petitioner Castelli from Petitioner Granado-Villar at Miami Children's Hospital, 6125 Southwest 31st Street in Miami on November 18, 1986. She gave Petitioner Granado-Villar a receipt for that package. Evenson subsequently delivered it to Piedmont Airlines at Miami International Airport at approximately 3:49 p.m. on November 18, 1986, for trans-

194

port on Piedmont flight number 814 from Miami to Tallahassee, departing at 5:00 p.m.

16. Piedmont's air bill, which corroborates the testimony of Evenson and the records of Crown Courier Services, Inc., shows that Piedmont received the package from Evenson for shipment on flight 814 to Tallahassee at 3:47 p.m. on November 18, 1986.

17. On November 19, 1986, at 9:00 a.m., C. Prine signed a Sonicair receipt for a package containing Castelli's 2986 licensure application.

18. The Sonicair shipping form contained information including the shipper's name—"D Granado-Villar;" the recipient—Department of Professional Regulation;" the date—"11/18/86;" a job number/bill of lading number—"A58408;" original airport code—"MIA" and destination airport code—"THL." The spaces provided for commercial value and declared value are blank, and other than the time of receipt written by C. Prine, there is no time indicated on the Sonicair shipping form.

19. The signature and designation "#10" for the shipper's signature and pickup agent on the Sonicair air shipping form were written by Edna Evenson, the courier for Crown Courier Services, Inc.

20. Accompanying the application from Petitioner Castelli was a hand written letter dated 11/18/86 from Petitioner Granado-Villar.

21. Petitioner Castelli's application bears a signature which was notarized by Erma M. Shockley in Dade County, Florida, with a date of November 17, 1986. The notarization states that the document was subscribed and sworn to before Shockley on the date of the notarization.

22. On November 20, 1986, Petitioner Castelli was notified that he was required to make a personal appearance before the Board at its November 22, 1986 meeting in Tampa. He failed to appear.

23. Petitioner Granado-Villar was also notified on November 20, 1986, that she was required to make a personal appearance on November 22, 1986, and she did appear.

24. At the proceeding on November 22 Dorothy Faircloth, Executive Director of the Board, specified the concerns of the Board's staff regarding Petitioner Castelli's application. The staff questioned whether the application had actually been received in Spain and completed by Castelli and returned to Granado-Villar for delivery in Tallahassee in such a short time span. It also appeared that the signature of Castelli on the application did not match his signature on previous applications and documents. The staff further questioned how the application could

have been notarized in Dade County, Florida, while Castelli was in Spain.

25. Petitioner Granado-Villar testified under oath at that proceeding that the application did make the trip from Miami to New York to Madrid to Miami to Tallahassee and that the signature on the application was that of Castelli. She admitted completing part of his application and arranging for a notary public who was very familiar with Castelli to notarize his application in Miami after she received it from Castelli who remained in Spain. Although Granado-Villar testified before the Board that Shockley was "well acquainted" with Castelli, it was established at the final hearing in this cause that Shockley and Castelli knew each other only incidentally. Some months earlier, Shockley notarized a copy of a document belonging to Castelli to be a true copy of the original, and they once passed each other in the hall at Miami Children's Hospital. Shockley had never before notarized Castelli's signature.

26. Petitioner Granado-Villar's testimony before the Board and testimony at the final hearing is corroborated by that of Petitioner Castelli at the final hearing. According to them, on November 17, 1986 Castelli drove from Seville, Spain, to Madrid, Spain, where he found the envelope containing his application waiting for him at the Iberia ticket counter in the Madrid airport. He signed the application, placed it back in the envelope, and gave it to a passenger to give the envelope to a woman who he described (Petitioner Granado-Villar). He advised the passenger that if the woman were not there to meet her when she "cleared customs," then the passenger was to take the envelope to the Iberia ticket counter in Miami International Airport. Castelli later telephoned Granado-Villar to inform her that the application would be on Iberia flight number 956 or 965 arriving at Miami at 4:00 p.m. Granado-Villar left the hospital to go to the airport at approximately 3:30 p.m. arriving there at approximately 4:00 p.m. She went to the Iberia ticket counter where she picked up the envelope which now bore her name. She drove back to Miami Children's Hospital, parked her car, and went directly to Shockley's office arriving thre between 4:20 and 4:30 p.m. She had Castelli's signature notarized. She then went to the emergency room area and waited approximately 5 to 10 minutes for Evenson to arrive. Evenson arrived at the hospital at approximately 4:40 p.m., completed the necessary paper work, and left. The testimony recited in this finding of fact is specifically rejected as being incredible.

27. According to flight arrival information maintained by the United States Custom Service, Iberia flight number 965 had a "block time" in Miami of 4:05 p.m. on November 18, 1986.

28. Block time signifies the actual time that an aircraft comes to a complete halt at its arrival gate, and that time is provided to the Customs Service by the airlines as required by the United States Government. Although Petitioners presented evidence that Iberia Airlines recorded in the form of a telex its "official" block time to have been 3:55 p.m., Iberia Airlines' "official" block time is specifically rejected in favor of the block time it gave to the United States Government on the general declarations form required by law to be filed by it.

29. It normally takes from 15 to 30 minutes for a passenger arriving on an international flight to "clear" the customs area at Miami International Airport. That time frame is extended by whatever time is takes for a passenger to disembark from an aircraft the size of an international flight and is also extended if the passenger is not an American citizen and must also go through immigration clearance. No evidence was offered as to how long it took a passenger arriving at approximately 4:00 p.m. on November 18, 1986, to clear customs.

30. Keeping in mind the fact that it took Granado-Villar one-half an hour to drive from the hospital to the airport, it is physically impossible for Granado-Villar's and Castelli's version of the movement of that envelope containing his application to be true. Except for the testimony of Granado-Villar and Castelli there is no evidence to show that the application ever reached Castelli in Spain. Carmen Rojas only sent it to the Iberia ticket counter at Kennedy Airport in New York. Even if the application reached Castelli, it is impossible that Granado-Villar retrieved the envelope containing the application from the Iberia Airlines ticket counter at Miami International Airport at the same time that the Iberia aircraft was arriving at the gate. There is no evidence that the unknown passenger was the first person off the aircraft, that she hastened to be the first in line at customs, that she was able to clear customs without going through the immigration check point in the minimum time of 15 minutes, or that she hastened to wherever the Iberia ticket counter might be in relationship to customers in order to have left the envelope in the custody of the persons at the Iberia ticket counter in order that Granado-Villar could retrieve that envelope and be back at Miami Children's Hospital and in Shockley's office by 4:20 or 4:30 p.m. Even if it could have happened as Granado-Villar testified, Evenson could not have picked up the package at 4:40 p.m. accomplishing the one-half drive to the airport in order to check in the package at Piedmont in time for that package to have been placed on an airplane which left at 5:00 p.m.

31. The application which was delivered to Piedmont Airlines for

transmittal to Tallahassee by Evenson prior to the arrival in Miami of Iberia flight number 965 was not the same application as the one Granado-Villar sent to Castelli in Spain for his signature.

32. The application which the Board received contained information regarding Castelli's medical education and surgical residency that conflicted with the application submitted by Castelli in 1985 and was incorrect. Even Castelli's height was reported to be different on those applications. In addition to containing incorrect information, the application submitted on behalf of Castelli in November of 1986 did not contain his signature and was not properly notarized.

33. Petitioner Granado-Villar submitted a fraudulently prepared application on behalf of Castelli and attempted to perpetuate the subterfuge by her testimony before the Board and by her testimony at the final hearing in this cause.

34. Petitioner Castelli participated fully in the submittal of his fraudulently prepared application to the Board. Even if an application had reached him in Spain for his signature at the airport in Madrid as he testified, that application was not notarized and it contained incorrect information at the time that he signed it.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the subject matter hereof and the parties hereto. Section 120.57(1), *Florida Statutes.*

Contrary to Petitioners' arguments contained in their proposed recommended order, this is a proceeding involving applications for licensure; it is not a disciplinary proceeding. As such, the law is well settled that the applicants bear the burden of proving entitlement to licensure. Petitioners have failed to carry that burden.

Respondent denied Petitioner Castelli's application for licensure as a physician by examination for the reasons that (1) the application, documentation, and testimony offered in support thereof revealed discrepancies and evidence of fraud, and (2) his application was not complete. The Board's Order referenced Section 458.331(1)(a), *Florida Statutes.* That section authorizes the Board to refuse to certify to the Department of Professional Regulation an application for licensure when it finds that an applicant has attempted to obtain a license to practic medicine by fraudulent misrepresentations. The evidence is clear that Petitioner Castelli has attempted to obtain a license to practice medicine by fraudulent misrepresentations in that he caused to be submitted on his behalf an application containing incorrect informa-

tion and bearing a false signature and notarization. Even had Petitioner Castelli prevailed in his version of the events surrounding the signing of that application, his signing would have still been falsely notarized and his application would have still contained incorrect information. The second basis for denial of his application—that his application was not complete—is also with merit. The submittal to the Board of the required updated application when that update contains a signature other than the applicant's, contains a false notarization, and contains information that is inaccurate cannot be considered as a properly completed application.

Petitioner Granado-Villar's application for licensure as a physician by examination was denied on the basis that she participated in a fraudulent scheme to obtain or attempt to obtain a medical license for another person. The Board's Order preliminarily denying her application for licensure cites to sections 458.327(1)(c), 458.331(1)(g) and (h), 777.011, and 777.04, *Florida Statutes.* Section 458.327(1)(c) provides that certain conduct constitutes a felony of the third degree, namely, attempting to obtain or obtaining a license to practice medicine by knowing misrepresentation. The Division of Administrative Hearings has no jurisdiction to adjudicate a person to be guilty of criminal conduct. Similarly, sections 777.011 and 777.04, *Florida Statutes,* relate to the adjudication of a person as being guilty of criminal activity and, therefore, are inapplicable in this administrative hearing regarding entitlement to licensure.

The Board's Order refers to the 1975 version of the Florida Statutes which reference is clearly in error. The 1985 versions of sections 458.331(1)(g) and (h) prohibit aiding or assisting an unlicensed person to practice medicine and failing to perform any statutory or legal obligation placed upon a licensed physician, respectively. Petitioner Granado-Villar did not aid or assist an unlicensed person to practice medicine, and she is not a licensed physician. Accordingly the 1985 version of those sections does not apply. In 1986 section 458.331(1) was re-numbered so that subsections (g) and (h) now prohibit failing to perform any statutory or legal obligation placed upon a licensed physician and making or filing false reports which are signed in the capacity as a licensed physician, respectively. Again, the re-numbered subsections are not applicable in that Petitioner Granado-Villar is not a licensed physician.

However, the Board's failure to include the correct statutory cite in its Order preliminarily denying Petitioner Granado-Villar's application is not dispositive. First, Petitioner was specifically put on notice as to the reasons why her application was being denied when she was

**199**

advised that the denial was based on her participation in a fraudulent scheme to obtain or attempt to obtain a medical license for another person. That language is specifically set forth in the Board's Order. Second, she was advised prior to the November 22, 1986 Board meeting that the Board was concerned about the events surrounding her transmittal to the Board of Petitioner Castelli's application. Indeed, she testified extensively before the Board on November 22, 1986 as to the identical conduct and the identical event upon which the denial was based and again testified extensively before the Board regarding her transmittal of Castelli's application at a Board meeting on February 9, 1987 at which time she was represented by the attorney representing her in this proceeding. That testimony was the basis for the Board's Order preliminarily denying her application, which Order was the subject of the final hearing in this cause. Lastly, these proceedings were consolidated as a result of Petitioners' Motion to Consolidate and their representation that these causes involved the same set of circumstances. Accordingly, Petitioner had actual notice of the basis for the Board's denial of her application, and that is all that is required.

It is clear that Petitioner Granado-Villar participated in Castelli's filing of a fraudulent application and that she well knew that the application was false, that the signature contained thereon was false, and that the notarization contained therein was false. It is abundantly clear that she participated in a fraudulent scheme to obtain or attempt to obtain a medical license for another person in violation of section 458.331(1)(a), *Florida Statutes.* She, like Petitioner Castelli, has failed to meet her burden of proof in showing that she is entitled to licensure by examination as a physician in the state of Florida.

Petitioners filed posthearing on September 23, 1987 a Proffer of Testimony of Michael Borrelli. That testimony was excluded at the final hearing in this cause for two reasons. First, Mr. Borrelli was offered as a rebuttal witness; however, his testimony is not in the nature of rebuttal and was required to have been presented by Petitioners during their case-in-chief. Second, had Mr. Borrelli's testimony been offered during the case-in-chief, it would have been excluded as being irrelevant. His testimony is in the nature of a reconstruction of how long it might have taken the passenger on the Iberia flight from Madrid to Miami to walk from the gate to the Iberia counter. There is absolutely no similarity shown between the reconstruction staged by Mr. Borrelli and the actual events that might have occurred on November 18, 1986. According, Mr. Borrelli's testimony remains properly rejected.

200

Petitioners have also filed posthearing a Notice of Filing on December 11, 1987 and a Motion for Reconsideration of Ruling on December 15, 1987. Respondent's Response to Petitioners' Motion for Reconsideration of Ruling and Notice of Filing was filed on December 18, 1987. On January 11, 1988 Petitioners filed Petitioners' Reply to Respondent's Response to Petitioners' Motion for Reconsideration of Ruling and Notice of Filing, and on January 12, 1988 Petitioners filed Petitioners' Notice of Supplemental Authority. In essence, Petitioners are attempting to re-argue three months later an evidentiary ruling made during the final hearing conducted on September 17 and 18, 1987. Petitioners are attempting to exclude the Piedmont airbill which shows the time on which Crown Courier Services, Inc., delivered the envelope containing Castelli's application to Piedmont Airlines for placement on its flight 814 departing Miami at 5:00 p.m. on November 18, 1986 and traveling to Tallahassee. At the final hearing, Petitioners objected to the admission of that document on the basis that its existence was not timely revealed to Petitioners. Extensive argument was heard as to when and under what circumstances the existence of that document was discovered by the Respondent, and a recess was taken by the undersigned during the course of that argument so the undersigned could read a transcript of a September 4, 1987, motion hearing before ruling on the document's admissibility. The Notice of Filing relates to the transcript of that September 4, 1987 telephone conference hearing with a prior Hearing Officer regarding the Respondent's ability to supplement its witness and exhibit lists due to Petitioner Castelli's failure to appear for deposition until September 15, two days before the final hearing in this cause. The prior Hearing Officer ruled that Respondent would be allowed to supplement its witness and exhibit lists as a result of that deposition. During that conference hearing the parties did not advise the Hearing Officer that the deposition of Edna Evenson, the courier who took the envelope from Miami Children's Hospital to Miami International Airport to be placed on the Piedmont Flight had been postponed to September 15 after the deposition of Petitioner Castelli. Under those circumstances and in view of the evidence presented by the time the document was offered in evidence and based on the arguments made at that time, Respondent was permitted by the undersigned to have verbally supplemented its exhibit list, and the Piedmont airbill was admitted in evidence as being corroborative of the testimony of Edna Evenson and of the records of Crown Courier Services, Inc. The Notice of Filing is untimely and is, therefore, stricken.

Petitioners' Motion for Reconsideration of Ruling recites the argu-

201

ments raised by Petitioners when the Piedmont airbill was offered into evidence. The Motion, however, adds new arguments not raised at the time. Accordingly, paragraph numbered 3 of the Motion for Reconsideration of Ruling, which raises new grounds which have previously been waived, is hereby stricken. Otherwise, the Motion for Reconsideration of Ruling is denied.

Petitioners' Reply to Respondent's Response to Petitioners' Motion for Reconsideration of Ruling and Notice of Filing is an unauthorized pleading and is hereby stricken.

Petitioners' Notice of Supplemental Authority is another attempt to argue the exclusion from evidence of Piedmont's airbill. The case relied upon in that Notice does not stand for any new proposition of law or any change in the law as it existed during the time of the final hearing when the arguments that were raised regarding the document's admission into evidence were considered and the exhibit was admitted. According, Petitioners' Notice of Supplemental Authority is not what it purports to be but rather constitutes another delayed attempt to re-argue the same issue. Having been filed almost four months after the final hearing, Petitioners' Notice of Supplemental Authority is hereby stricken.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is,

RECOMMENDED that Final Orders be entered denying the applications of Petitioner Guiseppe Castelli and of Petitioner Deise C. Granado-Villar for licensure by examination as physicians in the state of Florida.

DONE and RECOMMENDED this 22nd day of January, 1988, at Tallahassee, Florida.